**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DAMONT HAGAN,                )
               Petitioner,     )
                       )
    vs.                      )      Civil Action No. 13-1566
                       )      Chief Magistrate Judge Maureen P. Kelly
JON FISHER; THE ATTORNEY    )
GENERAL OF THE STATE OF      )
PENNSYLVANIA,            )
             Respondents.   )

## <u>MEMORANDUM OPINION</u>

Damont Hagan ("Petitioner") has filed this Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"), ECF No. 3, seeking to attack his state court conviction for Aggravated Harassment by a Prisoner in connection with his throwing of feces on corrections officers at the State Correctional Institution at Fayette ("SCI-Fayette").

Petitioner, proceeding pro se, raises one ground for relief.

**Ground One:** Damont Hagan was denied his right not to be placed in jeopardy twice under the Fifth Amendment when the trial judge disregarded counsel[']s request for a continuance for reasons that also applied to a mistrial request and granted a mistrial without considering less drastic measures when he was aware that the facts were not clear enough to establish manifest necessity.

ECF No. 3 at 5 – 6.  Because the state courts addressed this claim on the merits and because Petitioner failed to show that the state courts' adjudication of this claim was contrary to or an unreasonable application of United States Supreme Court precedent, and because he fails to show that the state courts unreasonably determined the facts, the Petition will be denied.  Furthermore, because jurists of reason would not find the foregoing conclusion debatable, a Certificate of Appealability will also be denied.

## I.  PROCEDURAL HISTORY

### A.  State Court proceedings

In September 2007, Petitioner appeared in the Court of Common Pleas of Fayette County to face charges in connection with his throwing feces on corrections officers in the Restricted Housing Unit ("RHU") at SCI-Fayette.   Petitioner represented himself with Attorney Thomas W. Shaffer, of the Fayette County Public Defender's Office, as stand by counsel.  The trial was presided over by the Honorable Conrad B. Capuzzi.  On the first day of trial, opening statements were presented and the trial court then broke for a lunch recess.  After the recess, in response to a question by Judge Capuzzi, Petitioner's stand by counsel indicated that, while Petitioner was in a cell in the county jail, he attempted to slit his wrist during the recess.   Consequently, Judge Capuzzi declared a mistrial.  No appeal was filed thereafter from the declaration of a mistrial.

A jury trial was subsequently conducted in September 2008 (the "second trial") before the Honorable Ralph C. Warman.  ECF No.  15-17.   Petitioner, represented by counsel in the second trial, was convicted of one charge of Aggravated Harassment by a Prisoner and he was sentenced to 3 to 7 years of confinement, which was to be served consecutively to sentences that were previously imposed by the Courts of Common Pleas of Allegheny County and of Luzerne County.[1]   Petitioner filed a direct appeal but it was discontinued in October 2008.  Petitioner

---

[1] It appears that Petitioner has not yet begun to serve the $3 - 7$ year sentence which is the subject of this Petition. See Inmate Locator website listing Petitioner's current committing county as Allegheny County, available at:

    http://inmatelocator.cor.pa.gov
(site last visited 6/29/2016).

subsequently filed a Post Conviction Relief Act ("PCRA") petition and following a hearing thereon, his direct appeal rights from the second trial were reinstated nunc pro tunc.

In the reinstated direct appeal, Petitioner complained that the second trial violated his double jeopardy rights. After Petitioner filed his reinstated direct appeal, Judge Warman filed an Opinion in support of the conviction. In the Opinion, Judge Warman wrote in support of the conviction, explaining why the second trial did not violate Petitioner's double jeopardy rights, as follows:

On July l0, 2006, defendant was an inmate at the State Correctional Institution (SCI) Fayette serving a previously imposed state sentence. On said date Corrections Officers Matthew Land and Randall Smith were preparing to deliver the evening meal on J Block in A Section of the Restricted Housing Unit. When Corrections Officer Land arrived at defendant's cell and opened the food aperture in the door to issue defendant eating utensils, defendant threw a slurry of feces onto the officers with the feces striking Corrections Officer Land on various parts of his body including his face. Corrections Officer Smith was also struck with the feces on his left arm.

On September 13, 2007, the defendant's case was called for trial before the Honorable President Judge Conrad B. Capuzzi, now retired Senior Judge. Defendant was present representing himself having waived his right to counsel in a colloquy held before· Judge Steve Leskinen. Attorney Thomas Shaffer of the Fayette County Public Defender's Office was appointed by the Court as stand-by counsel. The jury was empaneled and sworn, and the Commonwealth and defendant each gave their opening statements during the morning session. At approximately 11:45 A.M. the Court declared a recess for lunch informing the parties and the jury that the trial would resume at 1:15 P.M.

After the luncheon recess the Court instructed its tipstaff to seat the jury in their assigned places in the jury box as soon as the defendant, who was being held in the county jail, took his seat at counsel table. When the judge entered the courtroom a few minutes later, the defendant did not rise. He was slumped down in his chair, apparently limp, draped over the arm of the chair with his eyes closed.

Although the Court called the defendant's name and spoke to him several times, there was no response or movement from the defendant. Stand-by counsel told the Court that he had been trying to rouse the defendant for about 10 minutes but had been unable to do so. At that point stand-by counsel blurted out to the Court, in full view and hearing of the jury, that he had been told defendant slashed his wrist during the lunch recess.

The Court suddenly found itself confronted with a potentially prejudicial situation that arose so quickly there was no chance to remove the jurors from the courtroom. The Court observed that the jurors were glancing at each other, rolling their eyes and snickering.

Cognizant that a mistrial cannot be granted sua sponte  unless manifest necessity for doing so exists, the Court carefully considered the alternative of granting a recess or a continuance and then giving the jury a curative instructions [sic] [to remind the jurors that their verdict must be based only on the  evidence properly presented during the trial].[1]    Shortly thereafter, following further discussion between counsel and the Court and the defendant's continued unresponsiveness, stand-by counsel requested a mistrial on defendant's behalf which the Court granted.

Defendant acting pro se on January 8, 2008, filed a Motion for Habeas Corpus which was denied by Order of Judge Solomon dated February 8, 2008. Defendant on September 8, 2008 filed a Motion to Stay Proceedings which was denied by Judge Solomon following a colloquy held on September 8, 2008.

_____
[1]  As reflected in the record of September 13, 2007, the Court acknowledging its uncertainty at the time as to whether stand-by counsel had authority to act on a pro se defendant's behalf, also indicated that it was sua sponte granting the mistrial because the posture and unresponsiveness of the defendant constituted manifest necessity for doing so.

It appeared to the Court that no instruction, even after a lengthy recess or continuance would be able to restore the defendant and his credibility to a position where the empaneled jury would be able to give defendant a fair trial.

ECF No. 15-5 at 15 – 17 (Judge Warman filed his Opinion in support of the judgment of

sentence on February 4, 2011).   In his Opinion, Judge Warman greatly relied upon the fact that

the jury had heard the statement by stand by counsel regarding Petitioner's attempt to slit his

wrist, and accordingly, Judge Capuzzi properly concluded that "manifest necessity" existed so as

to warrant the grant of a mistrial sua sponte.

Petitioner, through court appointed counsel, Attorney Dianne Zerega, filed an appellate brief to the Pennsylvania Superior Court raising the claim that the second trial violated his double jeopardy rights.[2] The Superior Court affirmed. ECF No. 15-5 at 5 – 12.

In affirming the conviction and rejecting Petitioner's contention that his double jeopardy rights were violated by the second trial, the Superior Court did not rely upon the "manifest necessity" rationale of Judge Warman but instead, in effect, affirmed on other grounds. The Superior Court relied principally upon the rationale that Judge Capuzzi had terminated Petitioner's pro se status sua sponte and *sub silentio*, where Judge Capuzzi granted an oral defense motion for a mistrial made by Attorney Shaffer.[3] Thereafter, Attorney Zerega filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. It was denied.

On April 19, 2012, Petitioner filed a PCRA Petition in the state courts, raising his trial counsel's and direct appeal counsel's ineffectiveness for not properly litigating his double jeopardy claim. The PCRA trial court appointed Attorney Jeremy Davis as counsel. A hearing

---

[2] The specific issue was framed as:

> WAS THE APPELLANT SUBJECTED TO DOUBLE JEOPARDY WHEN HE WAS TRIED AFTER A MISTRIAL WAS IMPROPERLY GRANTED; IN THAT, THE COURT GRANTED A MISTRIAL WITHOUT CONSIDERING OR INVESTIGATING LESS SEVERE ALTERNATIVES, SUCH AS A ONE DAY CONTINUANCE TO DETERMINE THE NATURE AND SVERITY [sic] OF HIS INCAPACITY?

ECF No. 15-7 at 8.

[3]  We note that the constitutional standards for the grant of a mistrial are different where the Court sua sponte orders a mistrial and where there is a defense request for a mistrial. See, e.g., United States v. Dinitz, 424 U.S. 600, 608 (1976) (explaining distinction).

was conducted and the PCRA petition was denied. It does not appear from the record before this Court that Petitioner appealed from the denial of PCRA relief.

### B. Federal Court Proceedings.

Petitioner filed the instant Petition, pro se. ECF No. 3. Petitioner also filed a Memorandum of Law in support of the Petition. ECF No. 14. After being granted an extension of time, Respondents filed their Answer, ECF 15, and attached copies of much of the state court record. Petitioner then filed a Motion to Strike or Disregard Memorandum of Law in Support of the Petition of Writ of Habeas Corpus (the "Motion to Strike") that he had previously filed at ECF No. 14. ECF No. 19. The Motion to Strike was denied by the Court. ECF No. 21. Thereafter, Petitioner filed a Response, captioned "Answer to Respondents' Answer on Behalf of the Commonwealth in Support of the Dismissal of the Petition for Writ of Habeas Corpus Filed Pursuant to 28 U.S.C. § 2254" (the "Response"). ECF No. 22.

All parties have consented to have the United States Magistrate Judge exercise plenary jurisdiction. ECF Nos. 6 & 17.

## II. APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA

provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Supreme Court explained the two situations as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13. The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. See Matteo, 171 F.3d at 888; Werts, 228 F.3d at 197. Under the "contrary to" clause, the

relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the state court decision. <u>Williams</u>, 529 U.S. at 412. In contrast, under the "unreasonable application" clause, federal habeas courts may consider lower federal court cases in determining whether the state court's application of United States Supreme Court precedent was objectively unreasonable. <u>Matteo</u>, 171 F.3d at 890.

The AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## III. DISCUSSION

As addressed above, Petitioner identified one ground for relief in his Petition: that he was denied his right not to be placed in double jeopardy when the trial judge denied a continuance and granted a mistrial without allegedly considering less drastic measures when the facts did not establish manifest necessity. ECF No. 3 at 5 – 6.

In his Response, Petitioner, for the first time, raises three "issues presented" that appear to be supplementary to the one ground for relief (double jeopardy) raised in the original Petition. ECF No. 22.

> 1. The Superior Court applied the rule of "whether the Prosecutor intentionally provoked [A]ppellant into making his motion for a mistrial which deals with mistrials declared after a defendant moves for a mistrial, in its affirmation to deny Petitioner's appeal. This rule was an incorrect application of federal law, and the correct rule should of [sic] been "whether the trial court considered less drastic measures before declaring a mistrial sua sponte" due to Petitioner being pro se and at no time moving for the mistrial, and the judge doing so on its own motion.
> 2. The trial court and Superior Court decisions were unreasonably determined by facts that were not present in the record and has no founding. The trial court bases its decision of established manifest necessity on the fact that the

jury was present during the mistrial declaration, and the Superior Court bases its decision on the fact that Petitioner's pro se status was terminated. Neither can be found in the record.

        3. The trial court failed to consider the availability of a recess and properly consider the availability of a continuance sua sponte to diligently look into what was wrong with Petitioner during trial before declaring a mistrial. The trial judge had inadequate information as to what the problem was and is not a mental health expert to make a proper assessment. A continuance or a recess would of [sic] not inconvienied [sic] the jury due to the trial just starting, and would of [sic] not placed any bias towards Petitioner because the jury had no clue as to Petitioner's condition and was not present while the judge inquired. Furthermore, if the judge would of [sic] made the diligent effort it would have been discovered that Petitioner was under the symptoms of a mood disorder, and would of [sic] been ready to proceed three (3) hours later.

<u>Id.</u> at 2 – 3.

Before commencing our analysis of the one ground for relief raised by Petitioner, it is necessary to recognize that the Pennsylvania Superior Court, in affirming the trial court, did not rely upon the "manifest necessity" rationale of Judge Warman but instead relied upon the rationale that Judge Capuzzi had terminated Petitioner's pro se status sua sponte and granted the oral motion for a mistrial by Petitioner's attorney. As such, in considering the instant habeas Petition, our analysis must focus on the Superior Court's rationale. <u>See</u> <u>Simmons v. Beard</u>, 590 F.3d 223, 231-32 (3d Cir. 2009) ("In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims. The application of that approach is somewhat difficult here, where the different blocs of the Pennsylvania Supreme Court cited both procedural or substantive bases, or none at all, for their votes. The four-way split among the justices, with no ground for the case's disposition receiving majority support, means that we cannot find a single rationale explaining the Supreme Court's decision. However, the fact that the

result was supported by multiple lines of reasoning does not allow us to deem it 'unreasoned' and

look past it to the decision of the PCRA court.") (citation omitted).

**A.  The Superior Court Reasonably Determined the Facts.**

**1.  AEDPA governs challenges to factual determinations.**

The AEDPA specifically addresses the issue of a habeas petitioner's challenge to factual

determinations by the state courts.  The AEDPA provides:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim—
>
>> **(1)** resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>> **(2)** resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the
>> State court proceeding.
>
> **(e)(1)** In a proceeding instituted by an application for a writ of habeas corpus by a
> person in custody pursuant to the judgment of a State court, a determination of a
> factual issue made by a State court shall be presumed to be correct. The applicant
> shall have the burden of rebutting the presumption of correctness by clear and
> convincing evidence.

28 U.S.C. § 2254.

In the instant Petition, Petitioner argues, inter alia, that the Pennsylvania Superior Court's

factual determination that Judge Capuzzi had sua sponte terminated Petitioner's pro se status was

an unreasonable determination of the facts.  As such, in order to prevail, Petitioner must rebut the

Superior Court's factual finding with clear and convincing evidence.  See <u>Lambert v. Blackwell</u>,

387 F.3d 210 (3d Cir. 2004) (expounding on the AEDPA standard for factual challenges).

## 2. Factual determinations by the Superior Court.

Before we address Petitioner's argument, we recount the Superior Court's disposition of

Petitioner's double jeopardy claim. The Superior Court rejected Petitioner's double jeopardy

claim as follows:

> Appellant argues that the trial court improperly declared a mistrial *sua sponte* because the court failed to consider less drastic measures such as a continuance. Appellant is correct that where a court *sua sponte* declares a mistrial, "failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury." ***Commonwealth v. Hoovler***, 880 A.2d 1258, 1260 (Pa. Super. 2005), *appeal denied*, 890 A.2d 1057 (Pa. 2005)(quoting ***Commonwealth v. Kelly***, 797 A.2d 925, 936 (Pa. Super. 2002)).

> Nevertheless, we disagree with Appellant that the "manifest necessity" standard - and the requirement that the court consider less drastic measures than a mistrial – is applicable in this case. Appellant disregards the fact that his standby counsel, Attorney Shaffer, moved for a mistrial and the court granted that motion. The court only discussed the fact that manifest necessity also permitted it to *sua sponte* declare a mistrial in the event that standby counsel, Attorney Shaffer, was not legally permitted to make such a motion on Appellant's behalf.

> However, we conclude that Attorney Shaffer's actions were sound. Attorney Shaffer properly assumed control of Appellant's defense after Appellant intentionally cut his own wrist, leaving him incapacitated and unable to represent himself. The comment section to Pennsylvania Rule of Criminal Procedure 121(D), which permits standby counsel to be appointed when a defendant waives his right to representation, posits that standby counsel may assume control of the defense where "self-representation terminates;" for example, where "termination becomes necessary as a result of the defendant's unruly behavior." Comment to Pa.R.Crim.P. 121(d). Here, we conclude that Appellant's act of physically harming himself, resulting in his unresponsiveness once his trial resumed, constituted "unruly behavior" necessitating that Attorney Shaffer assume control of the defense.

> Thus Attorney Shaffer was permitted to move for a mistrial on Appellant's behalf and the sole question for our review is "whether the prosecutor intentionally provoked Appellant into making his motion for a mistrial." ***Commonwealth v. Simone***, 712 A.2d 770, 774 (Pa. Super. 1998). This is so because "[a] defendant's motion for a mistrial constitutes 'a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before

the first trier of fact.'" ***Id***. (citation omitted).  A defendant may only "raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion" where the Commonwealth's conduct intentionally "goaded" the defendant into moving for a mistrial. ***Id***. (citation omitted).

   Instantly, it is clear that the Commonwealth did not in any way provoke Appellant into requesting a mistrial.  Instead, it was Appellant's own reckless and disruptive conduct that resulted in Attorney Shaffer's moving for a mistrial on his behalf.  Accordingly, double jeopardy did not bar Appellant's retrial and conviction for the offense of aggravated harassment by a prisoner.

ECF No. 15-5 at 8 – 10.

### 3. Petitioner argues that the Superior Court's factual determinations were unreasonable.

Petitioner argues that the Superior Court's opinion was based on an unreasonable

determination of the facts in that the Superior Court erroneously found as a fact that "the defense

moved for a mistrial after Hagan's pro se status of terminated." ECF No. 22 at 16 (brackets

omitted).   Petitioner contends that the Superior Court erred as a matter of fact in finding that

Judge Capuzzi had terminated his pro se status at the first trial after he became unresponsive.

Petitioner recognizes that the Superior Court's determination as a matter of historical fact that

Judge Capuzzi had terminated Petitioner's pro se status is presumptively correct under the

AEDPA and, as such, his burden is to rebut that presumptively correct fact with clear and

convincing evidence.  ECF No. 22 at 13 ("A State Court's factual findings are 'presumed to be

correct' and the habeas Petitioner carries the 'burden of rebutting the presumption of correctness

by clear and convincing evidence.'").

In attempting to meet that burden of rebutting the Superior Court's presumptively correct

factual finding that Judge Capuzzi terminated Petitioner's pro se status after he became

unresponsive at the first trial, Petitioner contends that "[i]n looking at the first trial transcripts, its

[sic] clear at no time did the trial court [i.e., Judge Capuzzi] terminate Hagan's pro se status." Id. In support thereof, Petitioner points to the fact that at the second trial, he continued to have his pro se status at the second trial and points to the transcript of the second trial at page 3. That transcript shows that Attorney Shaffer was described by the Court as "standby counsel." That transcript shows that Attorney Shaffer concurred that he was stand by counsel and indicated to the Court that he had taken Petitioner in front of a motions judge to have the motions judge rule on two pro se motions filed by Petitioner. ECF No. 15-7 at 3.

Petitioner seemingly points to these events on September 9, 2008, to prove his pro se status on September 13, 2007, nearly a year earlier, after he became unresponsive during the first trial. Petitioner contends that this evidence of his pro se status at the second trial "contradicts the determination that Hagan's pro se status was terminated." ECF No. 22 at 16. We are not convinced.

### 4. The Superior Court's factual determinations were reasonable.

First, Petitioner reads the Superior Court's factual determination too broadly. The Superior Court did not state that Judge Capuzzi terminated Petitioner's pro se status forever thereafter. Rather, a fair reading of the Superior Court's factual determination is that Judge Capuzzi terminated Petitioner's pro se status due to his unresponsiveness and the need to somehow address that unresponsiveness at the first trial. It cannot be the rule, as Petitioner would seemingly argue, that faced with an unresponsive pro se criminal defendant who has stand by counsel, the only thing that a trial court judge can do is declare a recess or continuance until the unresponsive pro se criminal defendant becomes responsive, assuming that at some point the unresponsive defendant will do so. The United States Constitution simply does not demand that

13

such power be placed in the hands of the pro se criminal defendant as the potential for abuse is manifest.

Faced with an unresponsive criminal defendant, Judge Capuzzi was required to act. What did Judge Capuzzi do? According to the Superior Court, Judge Capuzzi terminated Petitioner's pro se status at least temporarily due to Petitioner's unresponsiveness, appointed stand by counsel as actual counsel and entertained a motion for mistrial from Petitioner's then counsel. The evidence that Petitioner points to of what transpired nearly a year later at the second trial simply does not rebut the factual finding of the Superior Court that Judge Capuzzi terminated Petitioner's pro se status for at least the duration of Petitioner's unresponsiveness. At the very least, this evidence of what transpired nearly a year after Judge Capuzzi's actions does not qualify as the clear and convincing evidence that the AEDPA requires to rebut the presumed correctness of the Superior Court's factual determination.

Following our thorough review of the record, we find that not only does Petitioner fail to rebut the presumed correctness of the Superior Court's factual determination, but the state court record affirmatively supports the Superior Court's factual determination.

At the first trial, Judge Capuzzi, attempted to ask Petitioner questions and he did not respond. Attorney Shaffer indicated that he too had asked Petitioner questions and that Petitioner was unresponsive. This attempt to get Petitioner to respond continued for some time. The transcript reveals the following:

THE COURT: Is he able to proceed with the defense of this case?

(Pause.)

MR. SHAFFER: He is unconscious, obviously. He is unresponsive.

14

THE COURT: Well is there a motion on his behalf that you are making?

MR. SHAFFER: Due to his physical condition, I would make a motion to continue to the next session.

THE COURT: Mr. Hagan have you heard what Mr. Shaffer has said?

(No response.)

THE COURT: The Court is observing the demeanor of the defendant, who seems to be either asleep or for some reason not responsive. He is sitting there slouched over with his head bent forward and his eyes are closed and he is not responsive.

Have you attempted to awaken him or get him back to some state of consciousness?

MR. SHAFFER: For the past ten minutes, yes, Sir.

. . . .

THE COURT: He is not responding to me or stand by counsel; is that correct.

MR. SHAFFER: Correct, Your Honor.

THE COURT: He is presently unavailable for trial in your view, Mr. Shaffer?

MR. SHAFFER: Yes, sir.

. . . .

THE COURT: The only motion before me is a motion for continuance and we may hear him coming in at some time saying that, I didn't voluntarily, intelligently and knowing ask that this case be continued. It was done by stand by counsel rather than counsel of my own choice.

We have what is like the horns of a double dilemma?

MR. HOOK: Correct.

THE COURT: But in light of the Court's observation of this man, I don't know how we can proceed.

MR. HOOK: I would have no objection at this point to a continuance. Really the jury has and we all have been inconvenienced and I am not going to object.

THE COURT: Well, he is no condition to proceed to trial of the case.

MR. SHAFFER: Yes, sir.

(Pause.).

THE COURT: The case having been called for trial; however, Mr. Shaffer, I don't know that a motion for continuance is the appropriate vehicle, maybe a motion for a mistrial might be more appropriate.

MR. HOOK: I would move for a mistrial, Your Honor.

THE COURT: Mr. Shaffer?

MR. SHAFFER: Under the Rules of Criminal Court of Pennsylvania, we would move for a Rule 605 mistrial.[4]

THE COURT: You do agree that we are beyond the continuance at this point?

MR. SHAFFER: Yes, sir.

THE COURT: The jury has been sworn and jeopardy has attached.

_____

[4] Pa.R.Crim.P. 605 provided:

(A) Motions to withdraw a juror are abolished.
(B) When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

MR. SHAFFER: Yes.

THE COURT: You agree that we are in no position to proceed in the trial of the case in light of the apparent self-inflicted incapacitation?

MR. SHAFFER: Yes.

THE COURT: I will grant the motion for mistrial.

MR. SHAFFER: Thank you.

ECF No. 15-16 at 6 – 9.

The foregoing supports the Superior Court's factual determination that Judge Capuzzi, sua sponte and *sub silentio* terminated Petitioner's pro se status. Reading this transcript in a light most favorable to the Respondents, as federal habeas review requires,[5] we find that Judge Capuzzi terminated Petitioner's pro se status when he asked Petitioner's stand by counsel, "[w]ell is there a motion on his behalf that you are making?" Asking stand by counsel if there is a motion he is making on behalf of a pro se criminal defendant is in tension with the status of the criminal defendant proceeding pro se. Cf. <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 179 (1984) ("*Faretta* rights are adequately vindicated in proceedings outside the presence of the jury if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel."). We find in Judge

---

[5] <u>See</u>, <u>e.g.</u>, <u>Warrington v. Rozum</u>, No. CIV.A. 12-2693, 2012 WL 6021317, at *6 (E.D. Pa. Nov. 8, 2012), *report and recommendation adopted*, 2012 WL 6021157 (E.D. Pa. Dec. 4, 2012) ("Appellant argues that there is no evidence that he and his co-defendant killed Royalston Calhoun while perpetrating a robbery. However, the record before us, viewed in a light most favorable to the Commonwealth, belies this contention.").

Capuzzi's question to Attorney Shaffer an implicit finding that Petitioner was incapable of proceeding pro se further and that in light of Petitioner's temporary incapacitation, it was necessary to terminate Petitioner's pro se status in order to protect his rights and that stand by counsel became actual counsel, and, perhaps also, guardian ad litem, for the sole purpose of representing Petitioner during his temporary incapacitation and to protect Petitioner's rights. Given Attorney Shaffer's new role, the record shows that Attorney Shaffer, acting on Petitioner's behalf, moved for a mistrial pursuant to Pa.R.Crim.P. 605, which Judge Capuzzi granted.   As such, the Superior Court's factual determination that the defense requested a mistrial is not unreasonable.  At the very least, Petitioner has not rebutted this presumptively correct factual determination with clear and convincing evidence.

Nevertheless, Petitioner argues that "the first trial transcripts clearly reflect that at no time did Hagan move for a mistrial." ECF No. 22 at 17.  If, by this, Petitioner means that Petitioner himself did not move for a mistrial, this is clearly correct.  But the record of the first trial reflects that Petitioner's then counsel most definitely did move for a mistrial.    Hence, in light of the fact that his pro se status was terminated, it is irrelevant that Petitioner himself did not request the mistrial given that his attorney most definitely did.  Smith v. Delaware Valley Auto Spring Co., 642 F.Supp. 1112, 1116 (E.D. Pa. 1986)("because the attorney-client relationship is one of principal and agent, I should apply the general principles of agency law.").

To the extent that Petitioner argues that there is nothing in the record to support the Superior Court's factual finding,[6] the argument is a losing argument for Petitioner because a

---

[6] Petitioner contended that the "[t]he trial court bases its decision of established manifest necessity on the fact that the jury was present during the mistrial declaration, and the Superior

(…footnote continued)

silent record fails to carry Petitioner's burden to affirmatively prove by clear and convincing evidence that the factual determinations are unreasonable.

This is because a state court judgment of conviction carries with it a presumption of regularity in federal court. Meyers v. Gillis, 93 F.3d 1147, 1151 (3d Cir. 1996) ("On collateral attack. . . ., the state receives the presumption of regularity and all reasonable inferences.") (quoting Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)); Sandoval v. Tinsley, 338 F.2d 48, 50 (10th Cir. 1964); Schlette v. California, 284 F.2d 827, 833-34 (9th Cir. 1960)("A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused."). Given this presumption of regularity, it is petitioner's burden to establish, that his constitutional rights were violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997)("On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated.").

Hence, Petitioner's argument that there is nothing in the record supporting the Superior Court's factual determination that Judge Capuzzi terminated Petitioner's pro se status or that the record is silent with respect to this fact is simply a losing argument as a silent record supports a state court conviction in federal habeas proceedings. Washington v. Sobina, 509 F.3d 613, 621 (3d Cir. 2007) ("Silence in the record is insufficient to overcome that presumption" under 28

---

Court bases its decision on the fact that Petitioner's pro se status was terminated. Neither can be found in the record." ECF No. 22 at 2 -3.

U.S.C. § 2254(e)(1));   Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral

attack, a silent record supports the judgment; the state receives the benefit of a presumption of

regularity and all reasonable inferences. . . . His [i.e., habeas Petitioner's] entire position depends

on persuading us that all gaps and ambiguities in the record count against the state. Judgments

are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a

heavy burden.").   A silent state court record redounds to a habeas petitioner's detriment because

the presumption of regularity or constitutionality of state court convictions and the presumptive

correctness of factual findings under the AEDPA supply the necessary facts to the extent that

they are not affirmatively present in the record.   In other words, the presumption of regularity or

of constitutionality attendant to state court convictions in federal habeas proceedings means that

the federal habeas court presumes that what was required by the Constitution was done in the

state courts and that what was forbidden by the Constitution was not done in the state court

proceedings.   It is up to a federal habeas petitioner to affirmatively show to the contrary.   This,

Petitioner has failed to do.

Nevertheless, Petitioner argues that the record is now clear that Judge Capuzzi did not

terminate Petitioner's pro se status. ECF No. 22 at 16 ("its [sic] clear that at no time did the trial

court terminate Hagan's pro se status.").   Petitioner seemingly suggests that Judge Capuzzi's

alternative grant of a sua sponte mistrial, is inconsistent with the idea that Judge Capuzzi

terminated Petitioner's pro se status and granted his counsel's motion for a mistrial.  ECF No. 14

at 10 – 11.

Petitioner's contention that the record proves that Judge Capuzzi did not terminate his pro

se status is not affirmatively supported by the state court record.   At most, what Petitioner's

arguments establish and what the evidence which Petitioner points to establishes is that the record is ambiguous with respect to Judge Capuzzi's terminating Petitioner's pro se status. However, establishing that the record is ambiguous is insufficient for Petitioner to carry his burden in this habeas proceeding. See, e.g., Fuller v. Wenerowicz, No. CIV.A. 13-535, 2014 WL 904297, at *10 (W.D. Pa. March 7, 2014) ("While *Higgason v. Clark* and *Robinson v. Smith* were decided prior to AEDPA's enactment, AEDPA increased the amount of deference federal habeas courts must give to state court adjudications. Hence, post-AEDPA, the courts' statements with regard to a silent or ambiguous record redounding to the detriment of the habeas petitioner apply even more forcefully now. *See, e.g ., Fields v. Thaler*, 588 F.3d 270, 278 (5th Cir. 2009) ('Although a lack of fair support in the record was sufficient to rebut a presumptively correct factual finding under pre-AEDPA law, the AEDPA increased the level of deference due to a state court's factual findings.'); *Dorchy v. Jones*, 398 F.3d 783, 787 (6th Cir. 2005) ('The present case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA), which has increased the deference that federal courts must give to state-court decisions.')").

Accordingly, having failed to rebut the presumed factual correctness of the Superior Court's factual finding that Judge Capuzzi terminated Petitioner's pro se status, the factual finding is binding on this Court.

**B. The Superior Court's Disposition was Not Contrary to or an Unreasonable Application of United States Supreme Court Precedent.**

Having decided what the facts are, our legal analysis is rendered easier. Given that Petitioner's counsel made an oral motion requesting a mistrial and the trial judge granted the motion, the standard of reviewing whether such grant of mistrial violates double jeopardy is whether Petitioner was goaded into requesting the mistrial. Oregon v. Kennedy, 456 U.S. 667, 672 (1982) ("in the case of a mistrial declared at the behest of the defendant, quite different principles come into play. Here the defendant himself has elected to terminate the proceedings against him, and the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause."). As the Court explained in Oregon, "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." Id. at 676. Accord United States v. Sandoval, 480 F. App'x 692, 695 (3d Cir. 2012) ("The test here is one of prosecutorial intent; '[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy.'"); United States v. Williams, 472 F.3d 81, 85-86 (3d Cir. 2007) ("Case law following *Kennedy* and *Curtis* has consistently emphasized that application of the double jeopardy bar is dependent on a showing of the prosecutor's subjective intent to cause a mistrial in order to retry the case.").

The Oregon test is precisely the test that the Pennsylvania Superior Court applied. Superior Court Slip Op., ECF No. 15-5 at 9 ("Thus Attorney Shaffer was permitted to move for a mistrial on Appellant's behalf and the sole question for our review is 'whether the prosecutor

intentionally provoked Appellant into making his motion for a mistrial.'") (quoting Commonwealth v. Simone, 712 A.2d 770, 774 (Pa. Super. 1998)). The Superior Court's application of this rule was neither contrary to or an unreasonable application of United States Supreme Court precedent on double jeopardy and mistrials.

Petitioner argues that the Superior Court applied a wrong rule of law asserting that the Superior Court erred and should have applied the manifest necessity standard asking "'whether the trial court considered less drastic measures before declaring a mistrial sua sponte' due to Petitioner being pro se and at no time moving for the mistrial, and the judge doing so on its own motion." ECF No. 22 at 2. Because the success of Petitioner's argument is based upon the factual premise that Petitioner never requested a mistrial and we find that the Superior Court's contrary factual finding to be binding on this Court, we can reject Petitioner's legal argument for having failed to establish the legal argument's required factual premise.

### C. The Remainder of Petitioner's Claim for Relief is Moot.

As addressed above, Petitioner asserted one ground for relief in the instant Petition. In his subsequent Response, he identified three "Issues Presented" that appear to supplement his sole ground for relief. In light of our disposition, finding that the Superior Court's rationale did not violate the AEDPA standards, we need not address Petitioner's sub-claim in "Issue Presented" Number 2 that Judge Warman unreasonably determined that the jury saw Petitioner's incapacity and heard the trial counsel's statement that Petitioner had attempted to slash his wrist as a basis for finding manifest necessity to grant a mistrial. The same is also true as to "Issue Presented" Number 3, concerning the trial court's alleged failure to consider less drastic alternatives, because we would only need to address this issue if we had to address whether

manifest necessity was met or not by the trial court's grant of the mistrial. In light of our conclusion that the trial court granted the defense motion for a mistrial requested by Attorney Shaffer, the manifest necessity standard is inapplicable. As such, we find this issue is also rendered moot in light of the Superior Court's reasoning.

## III. CONCLUSION

For the reasons set forth herein, the Petition is DENIED. Furthermore, because jurists of reason would not find the foregoing conclusion debatable, a Certificate of Appealability is also DENIED.


Date: June 30, 2016

BY THE COURT:

/s/Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


cc:    All Counsel of Record

Damont Hagan
DS-9488
SCI Greene
175 Progress Drive
Waynesburg, PA 15370